NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMPOSITION ROOFERS LOCAL 4 PENSION FUND, COMPOSITION ROOFERS LOCAL 4 WELFARE FUND, COMPOSITION ROOFERS LOCAL 4 ANNUITY FUND, COMPOSITION ROOFERS LOCAL 4 INFORMATION & EDUCATION FUND, : : : : : : : : : | |
| **Petitioners,** : | |
| **v.** : | **Civil Action No. 11-06528 (CCC)** |
| **J. MURPHY ROOFING & SHEET METAL, INC.,** : : : | **OPINION** |
| **Respondent.** : : | |

**CECCHI, District Judge:**

## I.   INTRODUCTION

This matter comes before the Court upon the motion of Petitioners Composition Roofers Local 4 Pension, Welfare, Annuity, and Information & Education Funds ("Petitioners") to confirm the arbitration award (the "Award") issued by Douglas A. Abel (the "Arbitrator") on August 29, 2011, and upon the cross-motion of Respondent J. Murphy Roofing & Sheet Metal, Inc. ("Respondent" or "Employer") to vacate the award. Submissions made in support of and in opposition to the instant motions have been considered by the Court.[1] The Court decides this

---

[1] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. Of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the following reasons, the Court grants Petitioners' motion to confirm the arbitration award and denies Respondent's cross-motion to vacate the arbitration award.

## II.    **BACKGROUND**

Petitioners are multi-employer employee benefit plans as defined in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002 (3). Respondent is a New Jersey corporation licensed to do business in New Jersey, and is an employer within the meaning of Section 2(2) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 152(2). (*See* Petition to Confirm Arbitration Award ("Petition"), ECF No. 1, ¶ 3), *see also* ERISA, 29 U.S.C. § 1002(5). Non-party to this action, Local 4 of the United Union of Roofers, Waterproofers and Allied Workers of Newark, New Jersey ("Local 4" or the "Union") is a labor organization and the sole and exclusive bargaining representative for a group of bargaining unit employees employed by Respondent. (Petition Ex. 2B).

Respondent and Local 4 were parties to a series of collective bargaining agreements (CBAs) ranging from June 2003 through May 2006, June 2006 through May 2009, and June 2009 through May 2012. (Petition Exs. 2, 2B, 2C). The CBAs set forth terms and conditions of employment for bargaining unit employees.

Article XXI of the CBA provides that the Employer (Respondent) agrees to be bound by the Agreement and the Declaration of Trust, Trust Indenture, and Restatements, adopted by Petitioners. It also includes a requirement that Respondent remit employee benefit contributions to the Petitioners Funds a specified sum for each hour paid to employees of the bargaining unit. (Petition Exs. 2, 2B, 2C, Art. XXI; Montalabano Cert., Ex. 3.) Furthermore, the Employer agrees that the Petitioners Funds are to be governed by the terms of the CBA and the Declaration

2

of Trust executed between the Petitioners, Respondent, and Local 4. (*Id.*) Article XXI of the most recent CBA also permits an authorized representative of the Petitioners Funds to conduct a contribution compliance review. (Petition Ex. 2C, Art. XXI, ¶ 21.8).

Article XVI of the CBA governs grievances and arbitration. (Petition Exs. 2, 2B, 2C). This Article pertains to the Employer and the Union and any differences that may arise in their interpretation or application of the CBA. (*Id.* at Art. XVI.) The Employer and the Union agree to submit to arbitration, and arbitration shall be commenced by the filing of a written demand with the New Jersey State Board of Mediators. (*Id.*) According to the CBA, all arbitration awards shall be final and binding upon the parties. (*Id.*)

The Petitioners adopted a Resolution on November 10, 2010, which authorized arbitration proceedings as a means of collecting delinquent contributions to the funds and enforcement of the posting of surety bonds. (Petition Ex. 3.) The Resolution identifies Daniel Brent, Esq. and Douglas Abel, Esq. as the permanently designated arbitrators. (*Id.*) Furthermore, the Resolution notes that the arbitration hearings and awards will conform to the rules of the New Jersey State Board of Mediation. (*Id.*) This document was signed by Respondent's management and members of the Local 4 Union. (*Id.*)

On or about May 3, 2010, MSPC, LLC conducted an audit on behalf of Petitioners, to examine Respondent's compliance with its benefit contribution obligations. (Petition ¶ 7.) The results of the audit revealed that Respondent had substantially underpaid its contribution obligations and a delinquency existed to the funds for the period of December 2004 through December 2007. (Petition ¶ 8.) Petitioners initially submitted the case to arbitration on March 9, 2011. (Petition ¶ 13.) Subsequently, after failed attempts at settlement, Petitioners resubmitted the grievance to arbitration on April 19, 2011. (Petition ¶ 16.) The case was heard by the

3

Arbitrator on July 26, 2011, at which time both parties appeared, were represented by counsel, provided witnesses, and submitted post-hearing briefs. (Petition ¶¶ 16–17.)

On August 29, 2011, Arbitrator Abel issued an Arbitration Opinion and Award. (Petition ¶ 18; *see* Montalbano Cert., Ex. 4 ("Arb. Award").)   Arbitrator Abel found that Respondent had under-reported its contribution obligations and thereby a delinquency existed.  (*Id;* Montalbano Cert., Ex. 4, at 9.)   Based on these findings, the Arbitrator ordered that Respondent pay Petitioners the principal amount of $47,208.12, plus liquidated damages (at 20%) of $9,441.62, attorneys fees (at 20%) of $9,441.62, per diem interest (at 12%) of $15.52 for each day from July 27, 2011 until paid in full, and arbitrator fees of $2,800.  (Montalbano Cert., Ex. 4, at 11.)

On November 7, 2011, Petitioners filed a motion to confirm the arbitration award.  On December 12, 2011, Respondent filed a cross-motion to vacate, arguing that the award cannot be confirmed under the Federal Arbitration Act ("FAA") because this Court lacks jurisdiction, the Arbitrator denied a fair hearing, the Arbitrator committed misconduct, and the Petitioners were premature in their submission to arbitration.  (Respondent's Br. 9–13.)  Respondent also claims that Petitioners cannot recover contributions on behalf of individuals who have no colorable claim of benefits and who are unidentifiable, and that the Arbitrator exceeded his authority in rendering an opinion regarding the issue related to the hiring of a subcontractor.  (Resp.'s Br. 15–27.)  On December 19, 2011, Petitioners filed a Brief in Opposition to Motion to Vacate Arbitration Award and in Reply to Opposition to Petition to Confirm Arbitration Award arguing that jurisdiction is proper and there was no arbitrator misconduct.  (Petitioners' Reply Br.) Respondent followed up with a letter in lieu of a brief filed on December 27, 2011 further contesting the jurisdictional issue and the Arbitrator's interpretation of the subcontracting provision in the CBA.  (Respondent Letter Br., ECF No. 10.)  Finally, on December 28, 2011,

Petitioners filed a letter brief responding to Respondent's letter addressing the jurisdictional dispute. (Pet. Letter Br., ECF No. 11.)

## III.   <u>LEGAL STANDARD</u>

Review of an arbitration award is extremely limited and conducted under a highly deferential standard. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "Our role in reviewing the outcome of the arbitration proceedings is not to correct factual or legal errors made by an arbitrator." *Major League Umpire's Ass'n v. Am. League of Prof. Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2002). "Instead, arbitration awards are entitled to a strong presumption of correctness, which can only be overcome in extremely narrow circumstances." *TQM Constr. Co. v. N.J. Bldg. Constr. Laborers Dist. Council, Local 394*, Civ. No. 11-831, 2011 U.S. Dist. LEXIS 37222, *6-7 (D.N.J. Apr. 4, 2011). A party seeking to vacate an award bears the burden of proving that the award at issue should be overturned. *Handley v. Chase Bank*, 387 Fed. Appx. 166, 168 (3d Cir. 2010) ("The party seeking to overturn an award bears a heavy burden, as these are 'exceedingly narrow circumstances,' and courts accord arbitration decisions exceptional deference.") (citing *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)).

Under the FAA, a court may vacate an arbitration award if the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Generally, a court will only vacate an arbitration award if it reflects a manifest disregard for the collective bargaining agreement or is entirely unsupported by the record. *Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the

award is legitimate." *United Paperworkers Int'l Union*, 484 U.S. 36 (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). "An award draws its essence from a collective bargaining agreement if the arbitrator's interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Local 4-406 United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied-Indus., & Serv. Workers Int'l Union v. IMTT-Bayonne, Inc.*, Civ. No. 09-05380, 2010 U.S. Dist. LEXIS 36792, at *4 (D.N.J. Apr. 14, 2010) (citation omitted). If the arbitrator was even arguably applying the collective bargaining agreement and acting within the scope of his authority, the fact that a court prefers its own interpretation is not sufficient to vacate his award. *United Paperworkers Int'l Union*, 484 U.S. at 38. "Neither a court's disagreement with the arbitrator's construction of a contract nor its belief that its interpretation of a contract is better justifies a court overruling the arbitrator." *Exxon Corp. v. Local Union 877, Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 980 F. Supp. 752, 760 (D.N.J. 1997) (citing *News America Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990)).

## IV.   **DISCUSSION**

Respondent seeks to vacate the Award on the grounds that (1) this Court lacks jurisdiction under the FAA; (2) the Arbitrator denied a fair hearing by failing to postpone the hearing date; (3) the Arbitrator committed misconduct; (4) the Petitioners were premature with their submission to arbitration; (5) the Petitioners cannot recover contributions on behalf of individuals who have no colorable claim of benefits and who are not identifiable; and (6) the Arbitrator exceeded his authority in addressing the subcontractor issue and relying on an inapplicable CBA. The Court will address each argument in turn.

A.    **This Court Has Jurisdiction Pursuant to 29 U.S.C. § 1132 and 29 U.S.C. § 185**

Respondent argues that this Court lacks jurisdiction to confirm the arbitration award under the FAA.   Petitioners argue that they "do not rely upon the [FAA] as a basis for jurisdiction . . . Rather, jurisdiction is established under Section 502 of ERISA . . . as the Fund Trustees are seeking to collect delinquent contributions as authorized by ERISA."  (Pet. Opp. Br. 1.)  Further, the Petition provides:

> This Court has jurisdiction over these proceedings pursuant to 9 U.S.C. §§ 1-13, Section 301 of the National Labor Relations Act, 29 U.S.C. 185 and Section 502 of ERISA, 29 U.S.C. § 1132 and §§ 1001 *et. seq.*, as this matter concerns a dispute based on a Collective Bargaining Agreement.   This Court also has jurisdiction over these proceedings pursuant to 29 U.S. C. § 1331.  Venue is proper in this District pursuant to § 9 of the FAA, U.S.C. § 9, as well as 29 U.S.C. §1391, and 29 U.S.C.§ 1391, and 29 U.S.C. § 185 since Petitioners and Respondent maintain their businesses in the State of New Jersey and the underlying arbitration was conducted in New Jersey.

(Petition ¶ 5.)

The FAA does not itself confer subject matter jurisdiction upon a federal court. *Teamsters-Employer Local No. 945*, 963 F. Supp. at 345.   However, ERISA provides an independent basis for jurisdiction in this case.  Under Section 502 of ERISA, a civil action may be brought by a fiduciary to redress any violations, or enforce any provisions, of the Act.  29 U.S.C. § 1132(a)(3)(B).  A "fiduciary" is defined to include a trustee of an employee benefit plan.  29 U.S.C. § 1002(14)(A).  The District Courts of the United States have exclusive jurisdiction of civil actions brought under Section 502 of ERISA by a plan fiduciary.  29 U.S.C. § 1132(e)(1).  The action may be brought in the district where the plan is administered, where the breach occurred, or where a defendant resides or may be found.  29 U.S.C. § 1132(e)(2).

Here, the Court has jurisdiction under ERISA as Petitioners, ERISA employee benefit funds, brought this action to confirm an arbitration award in order to collect delinquent

contributions. This Court is the proper venue because Petitioners and Respondent maintain their businesses in the state of New Jersey and the underlying arbitration was conducted in New Jersey. (Petition ¶¶ 1, 2, and 17). Therefore, the Court finds that jurisdiction is proper pursuant to ERISA.

The Court also has jurisdiction pursuant to Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, under which a suit for violations of contracts between an employer and a labor organization may be brought in any district court of the United States which already has jurisdiction. 29 U.S.C. § 185(a). A "labor organization" is any organization, agency, committee or plan in which employees participate and which exists for the purpose of addressing employee/employer grievances and disputes. 29 U.S.C. § 152(5). Petitioners in this matter are a third-party beneficiary of the collective bargaining agreement between Roofers Local 4, a labor organization and J. Murphy Roofing and Sheet Metal, Inc., an employer. Therefore, jurisdiction is also proper under § 185.

**B.     The Arbitrator Provided a Fair Hearing**

Respondent also seeks to vacate the Award on the grounds that the Arbitrator deprived it of the opportunity to have a fair proceeding. Respondent argues that it was given an updated audit report the day before the arbitration, but the Arbitrator did not postpone the hearing in order to allow for a full review of that report. (Respondent Br. 12). As Respondent recognizes, arbitrators are given a substantial degree of discretion in exercising their judgment with respect to a requested postponement. *See Fairchild & Co., Inc. v. Richmond Fredericksburg & Potomac RR Co.*, 516 F. Supp. 1305, 1313-14 (D.C. 1981) ("[A]ssuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere with the award on these grounds.").

Based on the record, the arbitration was adjourned three times before the actual proceeding on July 26, 2011. (Montalbano Cert., Exs. 1–4.) On July 26, the arbitration proceeded as scheduled, and although Arbitrator Abel noted in his decision that Respondent had raised certain procedural questions prior to the arbitration, Respondent did not renew these questions during the hearing. (Arb. Award 1). In Respondent's post-hearing arbitration brief, the concept of an unfair hearing was raised, and ultimately dismissed by Arbitrator Abel in his decision. (Murphy Cert., Ex. B.; Arb. Award 10 (Aug. 29, 2011)). Arbitrator Abel determined that because Respondent was aware of the scope and nature of claims asserted by Petitioners and no new claims had been asserted, Respondent did not have legitimate grounds to argue prejudice. (Arb. Award, Montalbano Cert., Ex. 4, at 10.) The Court agrees with the Arbitrator's determination and finds that Respondent was aware of Petitioners' claims and had ample opportunity to prepare for the hearing. Therefore, the Court finds that Respondent has not provided a sufficient basis to show that it was denied a fair hearing.

### C.       The Arbitrator Did Not Commit Misconduct

Respondent argues that the Arbitrator committed misconduct by failing to accept Respondent's reasoning for why it should not be held liable for contributions to the Petitioners based on the subcontracting work done by Integrity Roofing in 2007. For the reasons set forth in Section E *infra*, the Court finds that the Arbitrator did not commit misconduct.

### D.       The Arbitrator's Determination Regarding the Audit Procedures Was Proper

Respondent argues that Petitioners did not follow the requirements in its audit policy statement, which provides "The Boards of Trustees shall have overall supervisory authority over all audits. The Board may delegate such authority to a Subcommittee, which shall be comprised of an equal membership of labor and management Trustees." (Murphy Cert., Ex. A, § 4.)

9

Respondent argues that Petitioners failed to follow this procedure by failing to bring the issue before the Subcommittee.  Respondent also contends that it brought this issue to the Arbitrator's attention during the post-hearing briefs, but that the Arbitrator ignored the issue.  (Resp. Br. 14; Murphy Cert., Ex. B, at 5.)

In opposition, Petitioners argue that Thomas Murphy, President of J. Murphy Roofing, did in fact meet with the Subcommittee delegated with the task of dealing with collection issues. (Pet. Opp. 4; *see* Critchley Cert. ¶¶ 8-9; Manuel Cert. ¶¶ 10-12.)  According to Petitioners, the Subcommittee heard Murphy's argument and refused to waive the claims.  (Pet. Opp. 4.)  As such, the Court finds that Petitioners did in fact follow the procedures set forth in the audit policy statement.

Furthermore, the Arbitrator referenced Respondent's post-hearing Legal Memorandum, in which Respondent asked to reopen the matter based on this and other arguments.  Arbitrator Abel rejected Respondent's argument "that the Fund's actions regarding the audit should alter any of [his] conclusions regarding this matter, or be a basis to reopen the hearing."  (Montalbano Cert., Ex. 4 at 10.)   He stated, "[a]gain, Murphy had adequate notice and opportunity to prepare for this hearing and to present any evidence or argument it thought pertinent."  (Montalbano Cert., Ex. 4 at 10.)   Thus, the Arbitrator did not find that Respondent presented any basis to re-open the hearing.   The Court finds that Arbitrator Abel gave sufficient consideration to Respondent's argument and the Court hereby affords his decision due deference.

### E.    The Arbitrator's Decision Regarding the Subcontracting Work Was Not Contrary to the Law

Arbitrator Abel found that Respondent owes $44,780.71 in contributions because it subcontracted certain work in 2007 to Integrity Roofing ("Integrity"), a non-party to the CBA, but failed to remit required payments pursuant to the CBA.  (Montalbano Cert., Ex. 4, 7-9.)

Respondent contends that because, as a matter of law, Petitioners cannot recover contributions on behalf of individuals who are not identifiable and have no colorable claim of benefits, the Arbitrator exceeded his authority in his conclusion of this issue. (*Id.*)

Respondent argues that as a result of the Arbitrator's decision, contributions "were awarded on behalf of unidentified workers/employees of Integrity not known to the Funds or Murphy and who are not participants of the Petitioner Funds." (Resp. Br. 16.) Therefore, "certain contributions will be made without any pension credits being awarded to anyone but will merely create a windfall to the Fund." (*Id.*)

Respondent cites to *Agathos v. Starlite Motel*, 977 F.2d 1500 (3d Cir. 1992) in support of its argument. In *Agathos*, Starlite employed ten employees during the audit period, but only contributed to Funds on behalf of two individuals. 977 F.2d at 1503. The District Court held "that the Funds suffered no damages. It stated that the unreported employees were never covered – and thus could not have made any claims for benefits – under the welfare plans for which contributions were being sought." *Id.* at 1504. The Third Circuit found that if "a Fund would be required to honor an employee's claim, then Starlite must contribute for that employee regardless of whether he or she in fact has a meritorious claim." *Id.* at 1508. The court remanded the issue for the district court to determine which of the "unreported employees" had a "colorable claim" against the funds and stated that "Starlite may avoid contributions only by establishing that the employee no longer has a colorable claim for benefits." *Id.*

Respondent argues that the case at bar is similar to *Agathos*, because the "individuals for whom contributions are sought are not only non-union employees . . . but are not known to be participants of the Petitioner funds and will never have pension benefits and/or eligibility for

11

health claims." (Resp. Br. 19.) Respondent made this argument in its post-hearing brief, but claims that the Arbitrator disregarded the issue. (*Id.*)

Petitioners contend that *Agathos* does not apply to this matter because that case "has absolutely nothing to do with a fund's claim of contribution contract damages arising from the wrongful use of subcontractors." (Petitioners' Br. 8-9.) Petitioners cite to *Walsh v. Schlecht*, 429 U.S. 401 (1977), which held that a clause in a collective bargaining agreement that required an employer who employed subcontractors to "be liable for payment of these employees [sic] . . . contributions in accordance with [the] Agreement" does not violate § 302 of the Taft Hartley Act." 429 U.S. at 405. The *Walsh* Court noted that it was appropriate to measure an employer's contributions based on the hours worked by his subcontractor's employees even though the subcontractor's employee "cannot share in the payments." *Id.* (citing *Moglia v. Geoghegan,* 403 F. 2d 110 (2d. Cir. 1968); *Kreindler v. Clarise Sportswear Co.*, 184 F. Supp. 182 (S.D.N.Y. 1960)).

The Court finds *Agathos* to be inapposite. Unlike the case at hand, the unreported employees in *Agathos* "failed to collect benefits [only] . . . because the Funds persistently violated their 'watchdog' duties under ERISA to identify the employees and inform them of their participation in the plans." *Agathos*, 977 F.2d at 1507. The Third Circuit found that "[t]his circumstance militates against unconditionally requiring Starlite to make contributions to the Funds." *Id.* The circuit court found that the Funds did not attempt to "satisfy their basic fiduciary obligations under ERISA . . . [or] attempt to conduct an audit of Starlite's records at any time . . . ." *Id.* Based on these circumstances, the court remanded the case to the district court to conduct an evidentiary hearing to determine which, if any, employees had a colorable claim for benefits. *Id.* at 1507-08.

12

The circumstances in *Agathos* are not present in this case.  Respondent does not claim that Petitioners were in dereliction of their obligations and based on the record, Petitioners did in fact conduct an audit and follow the procedures set forth in the CBA.  Further, the *Agathos* court stated that "[a]s a general rule, an employee is liable for fund contributions on behalf of all employees covered by a facially valid collective bargaining agreement, regardless of whether the employee actually collect benefits."  *Id.* at 1506.  Seeing as the CBA in this matter is facially valid, Respondent is required to make contributions pursuant to the CBA, regardless of whether the subcontractor will collect the benefits.  This fact is further supported by *Walsh* which, again, stated it is appropriate to measure an employer's contributions based on the hours worked by his subcontractor's employees even though the subcontractor's employee "cannot share in the payments."  429 U.S. at 405.

In his decision, the Arbitrator determined that because Respondent decided to subcontract with a non-signatory employer, it is required to "'guarantee and be responsible for' compliance with the Contract, including the Fund remittance obligations of the Contract [including those] . . . remittances that should have been made . . . but were not made by Integrity Roofing." (Montalbano Cert., Ex. 4, at 9.)   Based on his findings, Arbitrator Abel concluded that Respondent violated the subcontracting clause and he reviewed the auditor's calculation of damages based upon a formula approved by the Trustees, which measured the hours worked by the subcontractor's employees, and he awarded damages to the Petitioners.  (See Montalbano Cert., Ex. 4, at 7-9.)  The Court finds that the Arbitrator's decision does not contradict the law.

### F.   The Arbitrator's Decision Regarding the Subcontracting Work Did Not Exceed His Authority

Respondent also argues that the Arbitrator exceeded his authority by interpreting the subcontractor section in the CBA, Article XIII, claiming that the only section in the CBA that

13

addresses "contributions" is Article XI. Further, Respondent argues that the Arbitrator erred by relying on language in a subsequent CBA, language not present in the CBA that was in force during the time of the subcontracting work in question, and that the award should be vacated. (Resp. Br. 24.) Article XIII of the CBA which was in effect for the period of June 1, 2006 through May 31, 2009, provides:

> If the Employer, during the course of any contract which he has obtained for the performance of work or services within the work and territorial jurisdictions of the Union, decides to subcontract to another Employer in work covered under this Agreement, the Employer herein agrees to subcontract such work to such subcontracting Employer only in accordance with the terms of this Contract and on a condition the subcontracting Employer shall perform said work and services consistent with all the terms and conditions set forth in this Agreement and the subcontracting Employer shall guarantee and be responsible for said subcontracting Employer's compliance with all of the terms and conditions set forth in this Agreement.

(Montalbano Cert., Ex. 2B, ¶ 13.1.)   The Arbitrator's decision, however, quotes a later version of the CBA, in effect from June 1, 2009 through May 31, 2012, which states:

> If the Employer, during the course of any Contract which he has obtained for the performance of work or services within the work and territorial jurisdictions of the Union, the decision to subcontract to another Employer for work covered under this Agreement, *the Employer herein agrees to subcontract such work to Employer's signatory to this form of Agreement or to an Employer who as a condition precedent to the subcontract becomes signatory to this form of Agreement* and the subcontracting Employer shall perform said work and services consistent with all the terms and conditions set forth in this Agreement and the contracting Employer agrees to guarantee and be responsible for said contracting Employer's compliance with all of the terms and conditions set forth in the Agreement.

(Montalbano Cert., Ex. 2C) (emphasis added).   Respondent argues that the Arbitrator based his decision on the emphasized language above, which was added to the CBA after the relevant time period of 2007, and was therefore not effective.   (Resp. Br. 23-24.)   It also argues that it was not within the Arbitrator's authority to "construe and enforce clearly pure labor issues between the Employer and Union. . . [when] [s]uch a decision can have more far-reaching effect" such as

14

enforcing the guarantee of other amounts, such as payment of dues, from an Employer. (*Id.* at 25.) Petitioners did not reply to Respondent's argument on this issue.

The Arbitrator's decision indicates that in order to determine the contributions that were required from Respondent, it was necessary to review the subcontracting clause of the CBA. In doing so, he reviewed Article XIII of the CBA, albeit the most recent version, and found, among other things, that Respondent, as the signatory employer, is required to "'guarantee and be responsible' for compliance with the Contract," including the Contract's remittance obligations. (Montalbano Cert., Ex. 4, at 9.) This language is also found in the earlier version of the CBA. As such, it is evidenced from the decision that the Arbitrator thoroughly reviewed and considered Respondent's obligations and actions with regard to subcontracting and determined that it violated the requirements of the CBA. Accordingly, the Court finds that the Arbitrator did not exceed his authority and hereby affords his decision due deference.

## V.   CONCLUSION

For the reasons stated, Petitioners' motion to confirm the arbitration award is **granted** and Respondent's cross-motion to vacate the award is **denied**. An appropriate Order accompanies this Opinion.

DATED:  , 2013

_____
**CLAIRE C. CECCHI, U.S.D.J.**